UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                      :

FELIX CASTRO, *on behalf of himself and all others similarly situated*,    :

                             Plaintiff,                 :          23-CV-3516 (JMF)

            -v-                               :          <u>OPINION AND ORDER</u>

OUTDOORSMANS RESALE, INC.,                 :

                            Defendant.             :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In the last two years, lawyer Noor Abou-Saab has filed more lawsuits in this District than almost any other lawyer — a total of 349, all or nearly all bringing claims under the Americans with Disabilities Act ("ADA") alleging that a website is not accessible to those with visual impairments. On top of that, he filed another 56 cases in the same period (for a grand total of 405) in the United States District Court for the Eastern District of New York.

That would not be a problem, except that Mr. Saab has demonstrated time and again that he is not up to the task of complying with the many deadlines and obligations posed by his sizeable caseload. To cite just two examples from the undersigned's docket alone:

- In *Hernandez v. Nooworks, LLC*, No. 23-CV-2657 (JMF) (SLC), the Court threatened sanctions after Mr. Saab (and his adversary) twice failed to submit certain pre-conference documents, despite a reminder and a courtesy extension. *See id.*, ECF No. 17. Two weeks later, Magistrate Judge Cave also threatened sanctions after Mr. Saab repeatedly failed to submit certain settlement-related documents, despite multiple e-mail reminders from her Chambers. *See id.*, ECF No. 19.

- In *Robertson v. Bob Mackie Design Group, Ltd.*, No. 23-CV-5112 (JMF) (GWG), the Court threatened sanctions when Mr. Saab failed to file a motion for default judgment by the deadline, failed to respond to the Court's Order to Show Cause why the case should not be dismissed for failure to prosecute, and failed to file proof of service of the Court's Order to Show Cause. *See id.*, ECF No. 12. Magistrate Judge Gorenstein later admonished Mr. Saab (and his adversary) for various other deficiencies. *See id.*, ECF No. 17.

Not surprisingly, Mr. Saab's failures to comply with court-ordered deadlines and to prosecute his cases diligently have not been limited to the undersigned's docket.  As the attached Appendix makes plain, dozens of his cases in this District have been dismissed for failure to either serve or prosecute.  As the Appendix also shows, that number would surely be higher but for the fact that Mr. Saab is wont to dismiss cases voluntarily when confronted with judges demanding explanations for his repeated failures, no doubt seeking to preempt court-ordered dismissal or other sanction.

One might think that this record would have prompted Mr. Saab to exercise more care and attention, but regrettably the present case indicates otherwise.  Indeed, Mr. Saab failed to comply with *nearly every deadline* the Court set in this case — despite repeated reminders and second and even third chances.  His string of failures began with the very first deadline, August 17, 2023, when he (and his adversary) failed to submit certain required materials prior to their initial pretrial conference — despite an Order entered on August 14, 2023, reminding them to do so.  *See* ECF Nos. 11-12.  It continued on September 25, 2023, when the Court was advised that a Court-ordered mediation was not held because Mr. Saab had failed to provide the Court's Mediation Office with any potential dates for the session.  *See* ECF Nos. 18, 20.  And it continued still on January 4, 2024, when Mr. Saab (and his adversary) failed to submit certain required materials prior to their second pretrial conference — once again despite an Order entered just days earlier reminding them to do so.  ECF Nos. 24-25.  The Court *sua sponte* granted a courtesy extension until January 8, 2024, ECF No. 25, but remarkably Mr. Saab (and his adversary) missed that deadline too.

On January 9, 2024, the Court ordered Mr. Saab and his adversary to show cause why sanctions should not be imposed on them for their failures to comply with the Court's orders.  *See* ECF No. 26.  Mr. Saab's adversary timely responded and pointed his finger at Mr. Saab for some of the missed deadlines.  *See* ECF No. 27.  Mr. Saab failed even to respond to the Court's Order to Show Cause.  On Thursday, January 18, 2024, the Court converted a pretrial telephone conference

2

scheduled for Monday, January 22, 2024, to an in-person conference in light of counsel's unresponsiveness and repeated failures to heed deadlines.  *See* ECF No. 29.  In advance of that conference, the parties were required to file a joint letter.  *See* ECF No. 17, at 5; ECF No. 26.  But despite yet another reminder only days before the deadline, *see* ECF No. 28, Mr. Saab failed to respond to his adversary's outreach, *see* ECF No. 30.  As a result, his adversary filed a "unilateral[]" letter explaining that he had been "unable to secure the cooperation of [Mr. Saab], despite repeated attempts on [his] part and multiple reminders from the Court."  ECF No. 30, at 1.  Notably, the letter reported that Mr. Saab propounded zero "discovery demands" before the close of discovery on December 21, 2023.  *See id.* at 2.  The letter further noted that Defendant had noticed Plaintiff's deposition but it never took place because counsel was "never able to coordinate a time" for it.  *Id.*

      Mr. Saab finally came out of the woodwork at 4:39 p.m. on Friday, January 19, 2024, when he filed a notice of voluntary dismissal — almost certainly an attempt to avoid appearing at the January 22, 2024 conference and to evade any sanctions for his repeated failures to comply with the Court's Orders.  *See* ECF No. 35.  On the morning of Monday, January 22, 2024, the Court entered an Order noting that it would "so order" the voluntary dismissal — which it did, *see* ECF No. 35 — but that counsel was still required to appear at the previously scheduled conference because the Court retained jurisdiction to address the issue of sanctions.  *See* ECF No. 33 (citing *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014); *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 98 (2d Cir. 2003); and *Rice v. NBCUniversal Media, LLC*, No. 19-CV-447 (JMF), 2019 WL 3000808, at *4 (S.D.N.Y. July 10, 2019)).  That prompted a letter motion and multiple telephone calls from Mr. Saab to the Court's chambers requesting that the conference be adjourned or converted back to a teleconference.  *See* ECF No. 34.  In these communications, Mr. Saab represented that he was unable to appear in-person because he had had COVID-19 "last year."  *See* ECF Nos. 34, 36.  The Court gave Mr. Saab an opportunity to provide

3

medical documentation to support his request, ECF No. 36, but because he failed to provide any, the Court held the conference that afternoon as scheduled.

At the conference, Mr. Saab acknowledged his repeated "failures to follow [the Court's] orders." Jan. 22, 2024 Hr'g Tr. ("Tr."), at 3-4. He further acknowledged that this case was not the first in which he had fallen short of his obligations. *See id.* at 6. But he suggested that his failings were due to his health — that he was being treated for "complications for long COVID, COVID pneumonia" and had "consistently" gone to "different doctors" since being hospitalized in May 2023. *Id.* at 4, 6. He insisted that he was "balancing right now [his] livelihood and [his] health." *Id.* at 6. In response to a query from the Court about whether and when he had advised his client about the voluntary dismissal of the case, Mr. Saab revealed that he had done so only "[a]bout an hour" earlier — approximately three full days after the voluntary dismissal was filed. *Id.* at 7. He insisted that his client was "aware that some cases have been affected by [his] health" and represented that his client had given him "authority on these cases." *Id.*

Finding Mr. Saab's explanations inadequate to justify his repeated and egregious failures, the Court ordered him to pay $5,000 to the Clerk of Court as a sanction for "wasting [the Court's] time, wasting the [C]ourt's resources, and making [the Court] continually chase [him] down to ensure that [he] compl[ies] with [his] responsibilities." *Id.* at 12.[1] In addition, the Court ordered Mr. Saab to file (1) a declaration from his client "attesting that [the client] was made aware of the dismissal of this case, and attesting that [the client] had given [Mr. Saab] authority to dismiss cases without" prior notice or permission; and (2) documentation of his medical condition. *Id.* at 12-13. The Court reserved judgment on whether to impose additional sanctions subject to its review of

---

[1] The Court also ordered Mr. Saab's adversary, lawyer David Stein, to pay $1,000 to the Clerk of Court as a sanction for, *inter alia*, "repeatedly violat[ing] [C]ourt orders to file [documents], whether jointly or otherwise." Tr. 7, 12. The Court explained that Mr. Stein's fine was lower than Mr. Saab's because "comparatively" Mr. Stein was "not quite as at fault as Mr. Saab." *Id.* at 12.

4

these supplemental submissions. *Id.* at 13. Mr. Saab filed both submissions on January 29, 2024, and paid the sanctions on February 5, 2024. *See* ECF Nos. 38, 40.

Mr. Saab's letter regarding his medical condition — which the Court has filed under seal, *see* ECF Nos. 39, 40 (sealed), 41 — does, broadly speaking, corroborate the representations he made to the Court about his medical condition, namely that he contracted COVID-19 on or about April 3, 2023; that he was hospitalized briefly in May 2023; that he has since been diagnosed with "long COVID"; and that he has had approximately fifteen doctor appointments since April 2023 to attend to various symptoms. The Court is certainly sympathetic to Mr. Saab's health challenges and wishes him well. But they do not justify or excuse his repeated and flagrant violations of court orders in this case (let alone others). For one thing, a lawyer's ethical obligations — to his client and to the Court — do not cease because of health challenges. *See, e.g.*, N.Y. R. Pro. Conduct § 1.3(a)-(b) (providing that "[a] lawyer shall act with reasonable diligence and promptness in representing a client" and "shall not neglect a legal matter entrusted to the lawyer"); *id.* § 1.1(a)-(b) ("Competent representation requires the . . . thoroughness and preparation reasonably necessary for the representation. . . . A lawyer shall not handle a legal matter that the lawyer knows or should know that the lawyer is not competent to handle."). In fact, Rule 1.16(b) of the New York Rules of Professional Conduct expressly provides that "a lawyer *shall* withdraw from the representation of a client when . . . the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client," *id.* § 1.16(b) (emphasis added), a requirement that was plainly triggered in this case if Mr. Saab's health issues really did cause his failures.

But more broadly, Mr. Saab's attempt to justify his failure to comply with nearly every deadline in this case is belied by his conduct since April 3, 2023, when he apparently contracted COVID-19. Since that date, he has filed 221 cases (including this one) in this District and another

5

33 cases in the Eastern District, for a total of *254 cases*.[2] Even more remarkably, Mr. Saab has filed *eight new cases* in the two Districts since he appeared before this Court on January 22, 2024, and sought the Court's mercy on the ground that he was too sick to comply with the litigation demands of this case alone.[3] Put simply, it is hard to reconcile Mr. Saab's excuse for his conduct in this case when, in the relevant period, he voluntarily filed this and 253 other cases. This compels the conclusion that Mr. Saab either is exaggerating his health challenges or has routinely filed cases despite knowing that his physical condition would "materially impair[]" his "ability to represent [his] client[s]." N.Y. R. Pro. Conduct § 1.16(b). Either way, Mr. Saab's conduct here and in this District generally fell far short of minimal professional standards.

The declaration from Mr. Saab's client is, while brief, also broadly consistent with Mr. Saab's representations at the hearing. In particular, Mr. Castro affirms that Mr. Saab called him on January 22, 2024, and advised that this case had been "dismissed due to an agreement to resolve the lawsuit with the Defendant." ECF No. 38, ¶ 3.[4] He further states that he had given Mr. Saab "authority to speak on [his] behalf and authority to dismiss a case unilaterally without [his] prior consent" and, "[a]s such," he "also consent[s] to the dismissal of this action." *Id.* ¶ 4. That said, the declaration begs more questions than it answers. To begin, Mr. Castro's declaration confirms that Mr. Saab informed his client of the voluntary dismissal three business days *after* the fact, potentially in violation of the Rule requiring that a lawyer "promptly inform" his client "of . . . material

---

[2] By way of comparison, only one other lawyer — Mars Khaimov — has filed more cases in this District (339) in that same period. No one else even tops one hundred.

[3] Mr. Saab has also continued his trend of non-compliance with court orders and deadlines since the Court's January 22, 2024 conference. *See, e.g.*, *Castro v. Sportie LA, LLC*, No. 23-CV-7863 (JMF) (SDA), ECF No. 11 (S.D.N.Y. Feb. 12, 2024) (scheduling a telephone conference to "discuss [Mr. Saab's] failure to comply with the [c]ourt's orders").

[4] Mr. Castro does not specify *when* on January 22, 2024, Mr. Saab called him — i.e., whether Mr. Saab called him before the conference held that day, as Mr. Saab represented, or after.

6

developments in the matter." N.Y. R. Pro. Conduct § 1.4(a)(1)(iii). Query also whether Mr. Saab informed Mr. Castro about the "material developments" that preceded, and presumably led to, the dismissal (namely, Mr. Saab's violations of multiple Orders and this Court's Order to Show Cause); the declaration does not say. Mr. Castro's declaration and the sequence of events suggest that Mr. Saab may also have violated Rule 1.2, which makes plain that the decision whether to settle a case rests with the client, not counsel; requires counsel to "abide by a client's decisions concerning the objectives of representation"; and mandates that counsel "consult with the client as to the means by which they are to be pursued." *Id.* § 1.2(a); *see also, e.g., Mora v. Bareburger Grp. LLC*, No. 16-CV-4373 (FB) (RML), 2018 WL 4522086, at *3 (E.D.N.Y. July 12, 2018) ("While it is certainly permissible, and indeed routine, for lawyers to sign voluntary dismissals on their clients' behalf, that signature is intended to represent *their clients' decision* to voluntarily dismiss the action . . . ." (citing, *inter alia*, N.Y. R. Pro. Conduct §§ 1.2(a), 1.4(a)(1)(i)) (emphasis added)), *report and recommendation adopted in relevant part*, 2018 WL 4954088 (E.D.N.Y. Oct. 11, 2018).

More broadly, the overall arrangement between Mr. Saab and Mr. Castro raises troubling questions. First, in light of the Rules discussed above, it is not immediately apparent that it is proper for a lawyer to accept from his client, and then exercise, unilateral authority to voluntarily dismiss the client's cases without the client's prior approval in each case. Second, even assuming such an arrangement is proper, such an attorney-client relationship would cast doubt on who the real party in interest is in Mr. Saab's cases. In the last two years, Mr. Saab has filed a total of sixty cases on Mr. Castro's behalf challenging websites for products ranging from dog-training collars to insulated water bottles to Star Wars-themed clothing to cowboy hats to Irish kilts.[5] In each one, Mr.

---

[5] *See, e.g., Castro v. Celtic Croft, Inc.*, No. 23-CV-5529 (ER) (S.D.N.Y. June 28, 2023), ECF No. 1; *Castro v. W. Tx. Western Store, Inc.*, No. 23-CV-6529 (ER) (S.D.N.Y. July 27, 2023), ECF No. 1; *Castro v. Sportie LA, LLC*, No. 23-CV-7863 (JMF) (S.D.N.Y. Sept. 5, 2023), ECF No. 1; *Castro v. Performance Supplements, LLC*, No. 23-CV-9089 (JMF) (S.D.N.Y. Oct. 16, 2023), ECF No. 1; *Castro v. Sit Means Sit, Inc.*, No. 23-CV-9422 (JMF) (S.D.N.Y. Oct. 26, 2023), ECF No. 1.

Castro has alleged that he was unable to acquire goods or services because of access barriers on the website at issue and that, if those barriers were removed, he "intends" to revisit the website to make a purchase. *E.g.*, ECF 1, ¶¶ 36-38. Those claims of injury are hard to square with Mr. Castro's apparent willingness to let Mr. Saab simply write off cases without his approval or any explanation. And in any event, that willingness suggests that it is *Mr. Saab's* own financial interests that are driving his litigation tactics — a suggestion that raises ethical questions in itself. *See, e.g.*, N.Y. R. Pro. Conduct § 1.7(a)(2) (providing that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests"); *see also, e.g.*, *In re Demetriades*, 58 F.4th 37, 43, 52-53 (2d Cir. 2023) (affirming the suspension of a lawyer who had a "'mass' or 'volume'" ADA practice and used a "standard retainer agreement provid[ing] that her clients waived the right to pursue monetary damages . . . and agreed that any and all money . . . [would] go[] to [the lawyer]" (cleaned up)).[6]

Notwithstanding the Court's concerns about the nature of the relationship between Mr. Saab and his client, the Court will not impose additional sanctions on that basis. For one thing, the record on that issue is undeveloped and goes well beyond this individual case. For another, the Court's

---

[6]   In other words, there is reason to believe that Mr. Saab's "binge" of ADA website lawsuits is "essentially driven by economics — that is, the economics of attorney's fees." *Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278, 1282 (M.D. Fla. 2004). Notably, courts have long decried the tendency of some lawyers to exploit the ADA and analogous state laws for their own gain. *See, e.g.*, *Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 862-63 (C.D. Cal. 2004) ("The result . . . is that the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals). Serial plaintiffs . . . serve as professional pawns in an ongoing scheme to bilk attorney's fees. It is a type of shotgun litigation that undermines both the spirit and purpose of the ADA." (cleaned up) (citing cases)); *cf. Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 77 (2d Cir. 2022) (affirming dismissal of ADA claims for lack of standing based, in part, on "the broader context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings" and noting that the four plaintiffs had "filed eighty-one of over 200 essentially carbon-copy complaints between October and December 2019," all of which "use[d] identical language to state the same conclusory allegations" and "even contain[ed] the same typos").

Order to Show Cause did not provide Mr. Saab with notice that sanctions could be imposed based on his relationship and communication with his client. *See, e.g.*, *In re Gillespie*, No. 23-1819, 2023 WL 7548181, at *1-2 (4th Cir. Nov. 14, 2023). By contrast, the Court concludes that an additional sanction is warranted for Mr. Saab's repeated and flagrant violations of Court Orders because his excuse for those failures — his health challenges — is both inadequate and belied by the fact that he filed this case and over 250 others with full knowledge of those challenges. That is, the record as a whole makes plain that, whether due to his health or otherwise, Mr. Saab simply cannot keep up with the demands of such a sizeable caseload.

Specifically, the Court concludes that Mr. Saab should, as an additional sanction, be required to complete, within six months of the date of this decision, a minimum of two hours of continuing legal education ("CLE") on issues relating to law office management. Such CLE must not be counted towards, and will be in excess of, his CLE requirements for the New York bar and/or any other state bar to which he belongs. The CLE must be approved by state CLE authorities. *See, e.g.*, *Perez v. Edwards*, No. 20-CV-1359 (LJL), 2023 WL 5935029, at *6 (S.D.N.Y. Sept. 12, 2023) (imposing a similar sanction and citing cases). No later than **August 16, 2024**, Mr. Saab shall file an affidavit attesting to his fulfilment of the foregoing requirements; the certification shall include copies of the certificates of attendance. Failure to comply with any of the foregoing requirements will result in additional sanctions.

In addition, the Court concludes that a referral to the Court's Committee on Grievances is warranted. The Supreme Court has observed that "[m]embership in the bar is a privilege burdened with conditions. An attorney is received into that ancient fellowship for something more than private gain. He becomes an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice." *In re Snyder*, 472 U.S. 634, 644 (1985) (cleaned up). Further, "[a]s an officer of the court, a member of the bar enjoys singular powers that others do not possess." *Id.*

9

In exchange for "[t]he license granted by the court," members of the bar must "conduct themselves in a manner compatible with the role of courts in the administration of justice." *Id.* at 644-45.  Mr. Saab's record in the hundreds of cases that he has filed in this District suggests that he has repeatedly fallen short of this standard and failed to "conduct [himself] in a manner compatible with the role of courts in the administration of justice." *Id.*  More specifically, there is reason to believe that he has regularly violated various New York Rules of Professional Conduct, including, for example, Rules 1.1(a)-(b), 1.2(a), 1.3(a)-(b), 1.4(a)(1), 1.7(a)(2), 1.16(b)(2), 3.2, 3.3(f)(3), 3.4(a)(6), and 8.4(a), (h).  The undersigned can impose appropriate sanctions for Mr. Saab's failings in *this* case.  But only the Grievance Committee can take stock of Mr. Saab's conduct across the board, including conducting any appropriate probe into whether his relationship with his clients is proper.  Accordingly, pursuant to Rule 1.5 of the Local Civil Rules, the Court formally refers this matter to the Chief Judge for referral, in turn, to the Committee on Grievances to conduct an appropriate inquiry into Mr. Saab's conduct.

      Finally, Mr. Saab shall, no later than **February 21, 2024**, serve Plaintiff with a copy of this Opinion and Order and file proof of such service on the docket.

      SO ORDERED.

Dated: February 16, 2024  
      New York, New York

                                                        JESSE M. FURMAN  
                                                        United States District Judge

# APPENDIX

The following are examples of cases in which Mr. Saab repeatedly failed to comply with court orders and deadlines:

- *Lopez v. Fostani, LLC*, No. 23-CV-909 (MKV) (S.D.N.Y. July 25, 2023), ECF No. 17 (dismissing Mr. Saab's case for failure to prosecute after he failed four times to respond the court's orders to show cause and failed to show up at the show-cause hearing).
- *Lopez v. Martins Home & Garden, LLC*, No. 23-CV-2160 (AS) (S.D.N.Y. Nov. 29, 2023), ECF No. 23 (dismissing Mr. Saab's case for failure to prosecute in light of his failures to meet deadlines "for nearly five months . . . . [,] twice ignor[ing] warnings from the [c]ourt without explanation").
- *Yan Luis v. Au Naturale Cosmetics, LLC*, No. 23-CV-2949 (DEH) (S.D.N.Y. Nov. 21, 2023), ECF No. 16 (dismissing Mr. Saab's case for failure to prosecute after he failed to provide "any response" to multiple court orders).
- *Hernandez v. Stallex Skin Care, Inc.*, No. 23-CV-3085 (RA), 2023 WL 5580679, at *2 (S.D.N.Y. Aug. 28, 2023) (dismissing Mr. Saab's case for failure to prosecute given that "[t]he last filing from either party" and "the last joint communication from the parties" was "over two months ago").
- *Yan Luis v. Alpaca Collections*, No. 23-CV-3341 (MKV) (S.D.N.Y. Nov. 27, 2023), ECF No. 10 (dismissing Mr. Saab's case for failure to prosecute after he failed to respond to any of three orders to show cause).
- *Hernandez v. Junkfood Clothing, LLC*, No. 23-CV-6323 (AT), 2023 WL 8810215, at *2 (S.D.N.Y. Dec. 20, 2023) (dismissing Mr. Saab's case for failure to prosecute because of his failure to "communicate[] with the Court since filing the case in July 2023" without "good cause for [the] absence").

The following are examples of cases filed by Mr. Saab that were dismissed for failure to prosecute:

- *Yan Luis v. Jason Markk, Inc.*, No. 22-CV-4968 (ALC) (S.D.N.Y. Apr. 10, 2023), ECF No. 12.
- *Yan Luis v. Blue Eye, Inc.*, No. 22-CV-6470 (MKV) (S.D.N.Y. Feb. 9, 2023), ECF No. 9.
- *Troche v. Think Goodness, LLC*, No. 22-CV-7399 (ALC) (S.D.N.Y. Apr. 10, 2023), ECF No. 7.
- *Yan Luis v. Ancestral Supplements, LLC*, No. 22-CV-8582 (MKV) (S.D.N.Y. Jan. 23, 2023), ECF No. 7 (Mr. Saab later successfully moved to reopen).
- *Yan Luis v. Alt Fragrances LLC*, No. 22-CV-10215 (VEC) (S.D.N.Y. May 10, 2023), ECF No. 17.
- *Yan Luis v. Armchair Expert, LLC*, No. 22-CV-10497 (JGK) (S.D.N.Y. May 23, 2023), ECF No. 8.
- *Lopez v. Jans Boutique, Inc.*, No. 23-CV-1005 (VSB) (S.D.N.Y. Apr. 24, 2023), ECF Nos. 7, 12 (denying Mr. Saab's motion to reopen due to medical emergencies).
- *Lopez v. Partymakers Flowers & Balloons, Inc.*, No. 23-CV-1782 (VSB) (S.D.N.Y. May 8, 2023), ECF No. 9.
- *Hernandez v. Barreiro Interests, Inc.*, No. 23-CV-2507 (VSB) (S.D.N.Y. June 12, 2023), ECF No. 11.
- *Brown v. Gruv, Inc.*, No. 23-CV-3000 (LGS) (S.D.N.Y. July 13, 2023), ECF No. 15.

- *Hernandez v. Jacks Surf & Sport, LLC*, No. 23-CV-3521 (LGS) (S.D.N.Y. July 31, 2023), ECF No. 12.
- *Yan Luis v. Maximum Hum. Performance, LLC*, No. 23-CV-5172 (JHR) (S.D.N.Y. Sept. 20, 2023), ECF No. 23.
- *Castro v. Basin Sports, Inc.*, No. 23-CV-5836 (LGS) (S.D.N.Y. Jan. 8, 2024), ECF No. 21.
- *Rhone v. Pink Gorilla, LLC*, No. 23-CV-6001 (MKV) (S.D.N.Y. Nov. 20, 2023), ECF No. 6.
- *Gonzalez v. Retrospekt, LLC*, No. 23-CV-6824 (JLR) (S.D.N.Y. Jan. 2, 2024), ECF No. 11.

The following are examples of cases filed by Mr. Saab that were dismissed for failure to serve within the time set forth in Rule 4(m) of the Federal Rules of Civil Procedure:

- *Yan Luis v. Harlem Candle Co.*, No. 22-CV-5020 (VEC) (S.D.N.Y. Oct. 17, 2022), ECF No. 7.
- *Yan Luis v. Benevolence LA, Inc.*, No. 22-CV-5077 (LGS) (S.D.N.Y. Sept. 21, 2022), ECF No. 10.
- *Rhone v. Little Traveler, Inc.*, No. 23-CV-3326 (JGLC) (S.D.N.Y. Aug. 8, 2023), ECF No. 7.
- *Kunkle v. Pescience, LLC*, No. 23-CV-5094 (MKV) (S.D.N.Y. Oct. 23, 2023), ECF No. 9.
- *Castro v. Foray Golf, LLC*, No. 23-CV-5698 (JGLC) (S.D.N.Y. Oct. 26, 2023), ECF No. 7.
- *Yan Luis v. Tradehome Shoe Stores, Inc.*, No. 23-CV-6510 (ALC) (S.D.N.Y. Oct. 20, 2023), ECF No. 8.
- *Castro v. Sole Sports, Inc.*, No. 23-CV-7856 (JPO) (S.D.N.Y. Jan. 3, 2024), ECF No. 6.
- *Gonzalez v. Clipper Connection, LLC*, No. 23-CV-7930 (ALC) (S.D.N.Y. Dec. 28, 2023), ECF No. 7.
- *Gonzalez v. Pathfinder of W. Va., Ltd.*, No. 23-CV-7941 (JHR) (S.D.N.Y. Dec. 22, 2023), ECF No. 8.
- *Kunkle v. Amok Time, Inc.*, No. 23-CV-8526 (JGLC) (Jan. 11, 2024), ECF No. 7.

The following are examples of cases filed by Mr. Saab thar he voluntarily dismissed when faced with court-ordered dismissal or other sanction:

- *Castro v. Success, Inc.*, No. 23-CV-3626 (LGS) (S.D.N.Y. Sept. 5, 2023), ECF Nos. 23, 25 (voluntarily dismissing the case after being threatened with sanctions due to numerous failures to comply with court orders).
- *Hernandez v. Black Clover Enters., LLC*, No. 23-CV-6572 (LGS) (S.D.N.Y. Nov. 7, 2023), ECF Nos. 11, 14 (voluntarily dismissing the case after the court's warning that Mr. Saab's case would be dismissed for failure to prosecute if he continued to miss deadlines, and the court's admonition that "if the case is dismissed for failure to prosecute, it will be the third case represented by the Law Office of Noor A. Saab to be dismissed by the [c]ourt for failure to prosecute in recent months").